Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning everyone. The cases will be called in the order listed on the docket. The first case, United States v. Belton, has been submitted on the briefs. The first case on calendar for argument is United States v. Jarnig. Counsel for appellate, please proceed. Thank you, Your Honor. May it please the Court. Thomas Weaver on behalf of Mr. Jarnig. It's not very often that one gets an opportunity to argue a case two days after the Supreme Court has verified the law. What I'd like to do is start with what I assume the Court considers the more interesting issue, which is the issue of the sufficiency of the indictment after United States v. Rahif and the Greer v. United States case that was decided earlier this week. I'm also hoping to use a little bit of time to talk about the 924C issue because I don't want that to get lost, because my client is serving five years in prison on that 924C. Turning to the issue of the Rahif and the Greer case, it's my position that the indictment in this case is insufficient because it fails to clarify that Mr. Jarnig was required not just to know that he was in possession of a firearm, but also that he knew that he was ineligible to possess a firearm. The Greer case decided two days ago. The United States Supreme Court clarified that this is to be reviewed on a plain air standard given the fact that Mr. Jarnig did not timely object in the district court. However, even under the plain air standard... But you, so you agree, counsel, it's not structural error. There's no argument for it being structural error now in light of Greer. In light of Greer, I don't believe that that's an argument that I can make in good faith, your honor. However, I still believe that it's plain error and it still requires reversal. It's clear that the indictment does not clarify that the, that Mr. Jarnig was required to know what his felony status was. Counsel, wasn't that true of Greer and, isn't that true of all cases before Rehave? I think probably. I don't know that I've reviewed every single case, but certainly I think that's true. One would think it would just about have to be, right? I would think so, yes. But so the question then under Greer is whether the, whether the by which, if there had been a sufficient indictment that Mr. Jarnig could have presented in a way to undercut the element of the offense. The counsel, this is, I don't know if it's unusual, but you have a district court making a specific finding here. Doesn't that make your argument, the district court made a finding that the, that your client knew that he was a felon in possession. Doesn't that make your argument harder here? Meaning we're not looking at inferences to see how strong the record is. We have to actually find that the district court, we're not just reviewing for plain error, but we have to find an additional clear error by the district court on making that finding. I acknowledge that the finding by the district court does make my, my argument slightly harder. However, my, the, my fundamental argument is that the indictment is insufficient and everyone understood the indictment as not requiring the second, the Rahif knowledge element. If you look at the government's trial brief, it's clear that they did not consider it an element. This case is a little bit- Counsel, counsel, counsel, could you go back to the threshold point? My understanding in this case is that your client, government's position is that he wasn't allowed to possess a weapon. And the reason he wasn't allowed to possess a weapon is because his rights hadn't been restored. Another right, um, 10 years had not elapsed since an unconditional discharge. Is that correct? That is the government's position. And I have conceded- So it's not, in other words, forgive me for interrupting, but we're not communicating. It's not just a question of, of your client knowing that he was a felon, right? It's a question of the government needing to prove that he knew that the 10 years hadn't elapsed so that his rights hadn't been restored, isn't it? Or am I, am I wrong? I want you to straighten me out if I'm, if I'm misunderstanding. Well, under 18 U.S.C. 922 G20, a conviction does not count as a, uh, felony conviction for purposes of this statute if their civil rights had been restored. Right, so is the answer to my question yes? That's what the government has to prove. I'm not trying to take a lot of your time. I'm just trying to make sure that we're on the same page. They need to prove, I think if I understand the question right, the answer is yes. They need to prove not just that he was a felon, but that he knew that his civil rights had not been restored and therefore he was prohibited from possessing a firearm. Okay, so thank you. So, so good. If you could go back to Judge Nelson's question, because I think he's, we're right on the same path now. The, the question is your, your record is different than some of these other cases because my understanding is that your client brought a motion to dismiss on the basis that he alleged that his rights had been restored. He lost that, right, uh, argument. And, and I think that ruling is probably affirmable, but it is another question of whether he knew his rights had been restored, right? So what's your best shot that he didn't know that? My best shot is actually that the Alaska DOC acknowledges that the record is ambiguous. And I specifically in my brief, I think I cited it twice, once in the statement of facts and once in my argument, they specifically said that, um, it, it could be argued, I'm quoting here from the Alaska DOC. It could be argued that January 11th, 2008 is the unconditional discharge date. Right, so in ER 57, we've looked at that. They're referring, I think, to ER 57 where they said the parole hold had been released and he'd satisfied his time and he could get out. Right. And, and this is the, Judge Smith spent quite a bit of time talking about this right. He had been arrested for new charges and then they came back and said, okay, the parole hold is released. But the problem with that, I think if that's your argument, isn't the problem that it's still not quite 10 years? Well, um, so I, I have two arguments. One is that I think that a legitimate argument could be made that Mr. Jarnik subjectively believed that the date is actually earlier than January 11th, 2008. Even if we treat January 11th, 2008 as the operative date, his arrest was January 11th, 2018, exactly 10 years later to the day. So I thought he was told back 10 years previous that, that he was still not off parole and, and he had to wait several months. Well part of the, so I guess I want to distinguish between what is objectively true and what is subjectively believed. I have conceded for purposes of this appeal that it's objectively true that he had not been unconditionally discharged 10 years prior to his arrest on January 11th, 2018. However, the record is very ambiguous about what Mr. Jarnik subjectively believed. And I would submit that under Rahif, had he gotten the full benefit of that case, he could have litigated, basically re-litigated his pretrial motion to dismiss as a, this is what I subjectively believed. And I think it is possible, and that's all I have to show under, under plain, plain air, that it's reasonably possible that a trier of fact could have found that given the ambiguities in his record, given the fact that, that the intervening conviction had been reversed on appeal by the Alaska Court of Appeals, etc., that his subjective belief was reasonable. And that, I thought he, counsel, what's your best shot? This is your opportunity. We, we know this record. So based on this record, what can you tell us about how does it support, would it have supported a finding that he reasonably believed his rights had not been restored? Could you please be specific? I, I, I believe given the fact that he was repeatedly not told that he was on probation by the Alaska Department of Corrections, and the fact that when the judge finally did tell him you're, you still are on probation because of this intervening case, and then subsequent to that, the case that had re-triggered probation gets reversed on appeal, that his subjective belief was that he had gone the necessary 10 years at the time that he possessed the firearm on these two counts. Counsel, what case are you relying upon to support your argument that plain error review is, plain error is established if there is a finding that it was reasonably possible that he believed that he was not within the 10-year frame? I thought plain error review meant an error so plain that it should be recognized without the benefit of argument. So tell me what case says that, that is reasonably possible. Well, that, that's what the United States Supreme Court said two days ago in Greer at page 5 of the majority opinion. Well, it's slightly different, slightly different. They said that, that re-hafe error is plain, but I think Judge Rollinson's asking a slightly different question because in your particular case, the issue isn't whether your defendant, your client, knew he was a felon. The issue is about this 10-year delay. I, I understand that, but I, I'm quoting from page 5 of the majority opinion. If the defendant does not make such an argument or representation on appeal, the appellate court will have no reason to believe that the defendant would have presented such evidence to a jury and thus no basis to conclude that there is quote a reasonable probability, end quote, that the outcome would have been different absent the right of error. You said reasonable possibility. I'm, well, I don't know what I said. I'm reading from the opinion. I got it right in front of me. It says reasonable probability. That's why I asked you the question because you said reasonable possibility, which is different than a reasonable probability. Okay. If I, if I said possibility, I misspoke and I apologize. All right. Thank you. All right. I believe that my time is up. Thank you. All right. Counsel, we'll give you a minute for rebuttal. We're here from the government. May it please the court. My name is Karen Vandergaat and I'm an assistant United States attorney here in the district of Alaska. This is a case about Jonathan Jarnik, who is an 11 time felon who is prohibited from possessing firearms yet in 2017 and 2018, he sold drugs, possessed guns and maintained a drug involved premise. There are three issues before the court and the one that the court has been talking about mostly today has been on the rehype issues, which are issues two and three which based on the subsequent cases that have been published since the briefing in this case, including door, the amended opinion in Johnson. It appears that the plain error review is, which is what is consistent in the appellant Pelley's brief is what should apply here. The ninth circuit issued the amended opinion in door, which had some illuminating language regarding what the government needs to prove in these cases. And that is looking at what happened in trial. It's not really a sufficiency of the evidence, but I'm sorry, sufficiency of the evidence at trial. It's the best understood that the district court, did they apply the wrong legal standard in assessing the defendant's guilt, specifically by omitting the knowledge of status element. So that's what the door court had said. And as the court has already pointed out, the district court in our case did not omit the knowledge of status element under rehype. Well, wait, the judge was asked to find people almost like a crystal ball situation because it was sort of late breaking news. I don't mean to cast any aspersion, but the judge was asked to make a finding sort of last minute and the district court found he knew he was a felon. That's correct. Your position that that's sufficient. Yes. The super, the third superseding indictment language was changed in a way that was consistent with how the statute is written. And so the trial brief that the appellant is referring to was filed before that superseding indictment at an earlier trial setting back in February of 2019. The oral arguments in rehype were in April of 2019. This case had a third superseding indictment of May, 2019. I just, I don't think we're communicating. I didn't ask apparently a question. I'm sorry. Well, I'm trying to figure out whether your position is that was sufficient now knowing when we know now for the, for the district court to find that Mr. Jarnag knew he was a felon as opposed to knowing that his rights had not been restored. That's correct. Your honor. I don't believe that the court would be required to prove an affirmative defense that wasn't actually raised at trial. And I'm relying on it. That's what your brief said too. Why do you persist in telling us that this is an affirmative defense that this after, after we have, it seems to me to be pretty clear that this is an element the government has to prove. So I'm, I'm confused by that position. And I actually thought you were going to change gears here today. So can you help me out with that? Certainly. So the way that I read Benamor, which is looking under the same definitional statute of nine 22, 9 21 a it looks at antique firearm, which again is similar as an affirmative defense. And the way that the United States interprets that statute is that the rights restoration would be something that defendant would need to raise and under Benamor would have the burden of production. And then the United States would rebut it. Do you, are you aware of the government taking that position in any after we have, I am aware of that, that I'm aware of other felon in possession. I don't believe in other felon in possession trials that I've seen at the district court level that they've produced any evidence about the discharge date in the course of presenting the evidence. And I don't, I have not, again, I've not heard of anyone objecting to that. It doesn't seem to be something that people generally seem to apply. Nonetheless, the government did actually produce evidence at trial. The Sidney wood from the department of corrections did come to testify about the discharge date at the actual bench trial. And he testified that the defendant had served a six year flat sentence in the department of correction. And that's, he served a total of 2,191 days. So it's the United States position that if the defense doesn't raise it at trial, the United States should not be required to rebut it nor that the knowledge aspect of 924 A2 should apply to 921 A20. But even if it did, the United States did actually produce evidence in this case that would satisfy that requirement as well. And therefore it could not be plain error because that evidence was produced. There's no possibility that the outcome would have been different. That's the evidence and the issue at trial, I think was the responding for the government responding to the defendant's motion to dismiss. And he argued that his rights in fact had been restored. He argued that unsuccessfully, right? Yes, that was during the pretrial litigation. He, that is what he argued. Yes. Right. So I think what judge Nelson was trying to raise right at the top of the hour, so to speak, is that it is a slightly different question, whether defendant knew that his rights had been restored, given that in this particular case, there's correspondence back and forth, where he was insisting that they had been. And then the added wrinkle, which confuses things, is that the conviction, of course, for the new charges in 2006 was subsequently reversed by the Alaska Court of Appeals. So do you want to address that about whether that leaves room for reasonable doubt about whether he defended, understood his rights had not been restored? Certainly, your honor, the conviction that prohibited him from possessing firearms had a 2009. And so that, he was present at that hearing. That evidence is in the record that that hearing took place. That's where he was given his final time served sentence and released. So he would have known at that time. It's unreasonable to presume that he wouldn't know at that time and that evidence. But counsel, you're not answering the question. He's focusing on a different point. I just want to give you one more chance to focus on his argument, which is after that, in 2016, that conviction was reversed, right? And so by the time he was arrested here twice in 2017 and 2018, the question is, is there room for reasonable doubt about what he understood retrospectively about that conviction? No, because that's a different conviction. I'm all ears, but I think that is the question. I apologize for interrupting, your honor. That was a different conviction that was reversed. So the conviction that was reversed in 2016. I know. I know it was a different conviction. I mean, we have the timeline here. Certainly. So you seem to be focused on whether his rights had been restored as opposed to what he knew. So my argument is that since he was present at a hearing where the conviction that was not reversed had a final revocation hearing within 10 years, that he should have known because he was present at that hearing on the felony that remains on his record. So his argument about that is, you're talking about the August hearing and his argument about that is there's an earlier entry from the state of Alaska indicating that he had served all his time, completed that, but they set the hearing out. And of course, by statute in Alaska, they can set the, they have 120 days to set the hearing. And his point is that doesn't mean just because the board decides to have a later hearing that that changes that his status as being on or off parole. I don't see the government has responded to that in the And this, I believe, Judge Smith did an excellent job discussing because not only was he, again, as the court has pointed out, the hearing was set out. He was subject to additional violations at that time, failing to participate in a year analysis and failing to report. And so being aware of those, he should have known. Also, there are letters, and this is also referenced in Judge talking about his parole. So again, that would be the conclusion is that he knew he was on parole because in 2008, he's sending those letters. Those letters, of course, refer to the earlier conviction and he, and those are the letters pursuant to which they then responded and ultimately released the parole hold. That's correct, Your Honor. And again, with the timeline, that still would put, even if you're looking at different dates, it's the government's position, as I've said, that it would be August 11, 2019. He was there. That conviction still stands. He should know that that's when he was released from parole. But even if not, if there is a dispute over it, he still falls within 10 years. Those letters indicate what he's doing at that time as he was in jail on new charges that were subsequently reversed, as you've acknowledged. He was demanding a hearing because his position in those letters is that he had completed his as of December 2006, I believe. That was his position. He litigated that unsuccessfully, the district court, and I said, I sort of tipped my hand in saying, I think that's an affirmable ruling. The question is just whether, because he was insisting that it had expired, whether or not there's room for reasonable doubt. I think you've answered my questions. Counsel, did you cite the door case in your brief? I did not cite the door case in the brief. It was published subsequently and we did receive a filing that told the parties to read the door brief, the door case, as well as the amended Johnson opinion in preparation for today's oral argument. All right. Thank you. All right. If there are no additional questions, I would just ask the court to affirm the rulings of the district court and find that no plain error had occurred and that sufficient evidence as the 924c nexus to the maintaining a drug premises house is correct. Thank you. Thank you, counsel. Rebuttal. One minute. You're muted. Sorry, Your Honor. It's clear the court knows the record, at least as well as I do. You know the chronology. This is a very convoluted timeline. And the problem in this case, from my perspective, is that the failure of the indictment to notify Mr. Jarnag of his right to litigate not just what is true, but what he subjectively believed to be true, compromised his ability to get a fair trial and that this court should reverse. But counsel, you don't think that the addition of the word knowingly did that? I don't believe that. And for support of that, I would refer to the trial court brief where they outlined very specifically what the elements were that the court needed to find at trial. And they did not include a Rahif knowing element in their trial court brief. It is it was a an afterthought that was not argued at any point in the case, including a closing argument until the court was making its oral ruling. Coincidentally, two days before Rahif came down the pike. The issue is what the jury was instructed, not what the brief was for counsel. So the the issue is what elements were the jury instructed to look for? Well, this was a bench trial, so. Oh, I'm sorry. I'm sorry. So, OK, that makes it even worse for you because the judge did the amendment to the indictment, didn't he? Didn't he approve the amendment to the indictment to the third superseding indictment? Well, the third superseding indictment is the operative document that we're dealing with in this case. But why wouldn't the addition of the word knowingly to that sufficiently apprise the judge as to the elements that he was to find? Because the word knowingly does not specify the requirement that Mr. Jarnot was required to know what his conviction status was. It just says that he needs to knowingly possess the firearm. So do you think that the judge are you arguing that the judge was not did not make that finding? The judge did make an an afterthought finding during the judge's oral presentation, but it was not argued by either party. They have the judge. Excuse me for interrupting, but in response to judge, you're giving Judge Wollinson a different answer than you gave me. So I want to know your position. And I've got the transcript. I think the judge found that he knew he was a felon. Full stop. Is that right? That is correct. However, it was it was done after presentation of evidence. Counsel. Counsel. So in other words, the judge didn't find it wasn't asked to find that he knew his rights hadn't been restored. If we've got that wrong, now is the time to tell us. The judge did different findings. Okay. And I apologize. I don't have the. I've got that. I've got the transcript here. Okay. All right. I will rely on the transcript on what the judge found. Okay. So if the judge didn't. Is your argument that the judge did not find that that that he knew he was within the 10 years. Is that your argument? The judge did not. My recollection is that the judge did not make a specific finding as to that issue. But I again, I apologize. I don't have the exact transcript in front of me. I understand these cases have a tendency to run together sometimes, but. I don't know. I'm trying to take it back to the plain error review standard and how we get to the point that the judge did not make an appropriate ruling, a conviction. Well, my argument, I did not argue that the findings of fact were were inadequate. I argued that the superseding indictment was inadequate. That was my assignment of error. Right. You're saying it was a ray of error, right? There was a ray of error in the third superseding indictment. Yes. And so the conviction cannot stand because of that error. That's your argument. That is correct. And what the court. So what the prosecutor asked is the court prepared to make a finding as to what Mr. Jarnik on that date knew that he was a felon, as well as he knew that he was. And then the court interrupted, said, yes, he knew he was a felon. Then that that is an additional requirement. So it's my position that the court. It's ambiguous whether the court found that the court, whether the conviction prohibited him from possessing a firearm. Isn't that a different question than what the indictment said? Yes. I'm trying to I'm trying to answer the court's question. My assignment of error is that the third superseding indictment is inadequate because it doesn't make clear that Mr. Jarnik had to know that he was prohibited from possessing a firearm. That is my assignment of error. So do you think that the word knowingly did not did not modify that portion of the indictment? That is my position. And that is supported by the fact that the government's trial brief did not interpret it that way. No one no one interpreted it that way. All right. Thank you, counsel. Thank you. Thank you to both counsel for your helpful argument. The case is argued and submitted for a decision by the court. The next case.
judges: Rawlinson, Christen, R. Nelson